IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOBILE MINI, INC.,

    Plaintiff,                             No. CIV S-05-2458 FCD DAD

    v.

DOUG KHORDT,                              <u>ORDER AND</u>

    Defendant.                        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        This matter came before the court on July 13, 2007, for hearing on the plaintiff's motion for entry of default judgment against defendant Doug Khordt. William H. Littlewood, Esq. appeared telephonically on behalf of plaintiff. Deborah K. Keeley, Vice President and Controller of Mobile Mini, Inc., was also present telephonically. There was no appearance by or on behalf of defendant.

        Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that plaintiff's motion for entry of default judgment be granted on the terms set forth below.

PROCEDURAL BACKGROUND

        Plaintiff Mobile Mini, Inc. initiated this action by filing a complaint for conversion and imposition of constructive trust on December 5, 2005. Despite being served with

process, defendant failed to appear. On May 11, 2006, the Clerk of the Court entered default against the defendant pursuant to plaintiff's request filed May 8, 2006. On May 25, 2007, plaintiff filed the instant motion, noticing it to be heard before the undersigned pursuant to Local Rule 72-302(c)(19). Despite being served with all moving papers, defendant did not respond to the motion and did not appear at the hearing.

LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for entry of default judgment. Upon entry of default, the complaint's factual allegations regarding liability are deemed true, while allegations regarding the amount of damages must be proven. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987); Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)). Where damages are liquidated or otherwise capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. See Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983). Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion, see Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986), and the court is free to consider a variety of factors in exercising that discretion, see Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The court may consider such factors as:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

ANALYSIS

The complaint in this case alleges two claims for relief: civil conversion and constructive trust. The second claim will be dismissed pursuant to plaintiff's notice of dismissal and Federal Rule of Civil Procedure 41(a)(1). (<u>See</u> Pl.'s Mot. for Default J. at 6 n.2.)

The detailed allegations of the complaint reflect that plaintiff engages in the design, manufacture, rental, sale, and lease of high-security, all-steel portable storage containers, portable storage trailers, and portable offices, as well as components of such containers, trailers, and offices. Plaintiff also purchases and refurbishes used portable storage containers for re-sale at a competitive fair market value. Plaintiff operates branch stores in approximately thirty states. One of its branch stores is located in Stockton, California. Defendant was employed at plaintiff's Stockton branch during the approximate time period of August 1, 2001, to August 20, 2004. Defendant, as Branch Manager and Regional Manager, was responsible for the day-to-day operations of the branch. Defendant's duties included the sales and leasing of portable storage containers and the building of clientele and customers for the business. During the time he was employed by plaintiff, defendant took and/or refurbished and sold for his own financial benefit at least 39 refurbished portable storage containers owned by plaintiff.

Plaintiff's complaint includes a list of 39 specific portable storage containers that were converted by defendant to his own use. The list identifies each container by model and serial number and provides each container's fair market retail value at the time of conversion. The total fair market retail value of the 39 containers at the time of conversion was $208,773.93. The complaint seeks compensatory damages in this amount together with an unspecified amount of compensation for time and money spent in attempts to recover the stolen property. The complaint alleges that defendant acted with oppression, fraud, malice, and in conscious disregard of the rights of plaintiff, and on that basis plaintiff seeks an award of punitive and exemplary damages. Finally, the complaint seeks the costs of suit and interest on judgment at the maximum legal rate from entry of judgment until paid in full.

In the present motion for default judgment, plaintiff seeks $212,542.17 in actual damages. This figure is comprised of $208,773.03 for the fair market value of the 39 stolen containers, as alleged in detail in the complaint, and $3,768.24 for expenses incurred by plaintiff in connection with efforts to recover the converted property. Plaintiff also proposes pre-judgment interest at 10% per annum, with interest starting to accrue as of December 5, 2005, the date on which plaintiff's complaint was filed. In addition, plaintiff seeks punitive damages in the amount of $1,062,710.85, calculated by applying a multiplier of five to the total amount of plaintiff's actual damages.

Weighing the factors suggested in Eitel v. McCool, the undersigned has determined that default judgment against defendant is appropriate. Defendant has not appeared and there is no indication that his failure to respond to the complaint was due to excusable neglect. The complaint is sufficient, and the amount of money sought for actual damages is relatively small. There is no reason to doubt the merits of plaintiff's substantive claim. Nor is there any apparent possibility of a dispute concerning the material facts underlying the action. As these factors weigh in plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the merits, will recommend that default judgment be entered.

After determining that entry of default judgment is warranted, the court must next determine the terms of the judgment. As indicated above, plaintiff seeks $212,542.17 in actual damages, $1,062,710.85 in punitive damages, and pre-judgment interest at 10% per annum accruing from December 5, 2005. Each aspect of the proposed judgment is addressed below.

Under California law, "[e]very person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Cal. Civ. Code § 3281 (West 2007). Detriment is defined as "a loss or harm suffered in person or property." Cal. Civ. Code § 3282 (West 2007). In the present case, the amount sought by plaintiff as compensatory damages is comprised of the fair market value of 39 specific containers and the expenses incurred by plaintiff in connection with

recovery efforts. The first of these two components, the sum of $208,773.03, is the amount requested in plaintiff's complaint as the fair market value of the 39 containers at the time of conversion. At the hearing of plaintiff's motion, Ms. Keeley explained on the record that the fair market value of each container was determined in accordance with the company's standard procedures for valuing containers for sale based on typical gross profit. The undersigned finds that the sum of $208,773.03 is supported by the allegations of plaintiff's complaint, the Declaration of Deborah K. Keeley in support of plaintiff's motion, and the statements of Ms. Keeley and counsel at the hearing.

The second component of the proposed compensatory damages is the amount of $3,768.24 requested in plaintiff's motion as reasonable expenses incurred in connection with efforts to recover the 39 stolen containers. As explained in the Keeley Declaration and by the statements of Ms. Keeley and counsel in open court, this amount represents approximately 30 hours of Ms. Keeley's time and approximately 5 hours of her assistant's time in attempting to identify, locate, and recover the stolen property, including contacts with defendant concerning a possible payment plan. The undersigned finds that the sum of $3,768.24 constitutes reasonable compensation for time and money expended in pursuit of the stolen property. Compensation for such expenses was requested in plaintiff's complaint, and the requested amount is supported by plaintiff's motion, the Keeley Declaration, and the statements of Ms. Keeley and counsel in open court.

Based on the evidence submitted in connection with the instant motion, the undersigned will recommend that actual damages be awarded in the requested amount of $212,542.17.

The court turns next to plaintiff's request for punitive damages. California law provides for such damages as follows:

> (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the

> plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
> . . . .
> (c) As used in this section, the following definitions shall apply:
> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294(a) & (c) (West 2007).

Here, plaintiff seeks an award of punitive damages in the amount of $1,062,710.85. Plaintiff calculated this amount by applying a multiplier of five to the total amount of plaintiff's actual damages. Plaintiff's complaint includes the allegation that defendant acted with oppression, fraud, malice, and in conscious disregard of the rights of plaintiff. (Compl. ¶ 16.) The well-pled allegations of the complaint and the statements of Ms. Keeley and counsel on the record demonstrate that defendant converted 39 of plaintiff's containers to his own use during his employment as branch and regional manager of plaintiff's Stockton branch store. Ms. Keeley and plaintiff's counsel indicated on the record that defendant created false contracts and other documents to conceal his conversion of the 39 containers and that it was subsequently discovered that defendant engaged in similar conduct while working for the previous owner of the Stockton business before it was acquired by plaintiff.

The undersigned finds it evident from the allegations of the complaint, the evidence submitted in support of plaintiff's motion, and statements made on the record at the hearing of the motion that defendant intended to cause injury to plaintiff, that defendant intentionally engaged in ongoing misrepresentation and deception, and that defendant concealed material facts known only to him with the intention of thereby depriving plaintiff of property and legal rights. In light of clear and convincing evidence that defendant was guilty of fraud and

malice as defined by California law, the undersigned will recommend that exemplary damages be awarded in order to punish and deter defendant and others from engaging in fraudulent and malicious conduct.

Courts must consider several guideposts when considering punitive damages: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and any civil penalties authorized or imposed in comparable cases. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996). Although the Supreme Court has not identified specific constitutional limits on the ratio between harm to the plaintiff and the amount of punitive damages to be awarded, the Court has stated that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." 538 U.S. at 424-25. See Bardis v. Oates, 119 Cal. App. 4th 1, 26-27, 14 Cal. Rptr. 3d 89, 108 (Cal. Ct. App. 2004) (where the punitive damages awarded by a jury in a case involving fraud and breach of fiduciary duty yielded a ratio between punitive and compensatory damages of more than 42 to 1, the appellate court reduced the award to an amount that reached "the outermost limit," yielding a ratio slightly exceeding nine to one, which was "still within the single-digit threshold set out in Campbell, yet high enough to serve the goals of punishment and deterrence"), cert. denied, 543 U.S. 1150 (2005).

The reprehensibility of the defendant's conduct is the most important factor in assessing the reasonableness of punitive damages. Campbell, 538 U.S. at 419; Gore, 517 U.S. at 575. Five subfactors should be considered in evaluating reprehensibility: (1) whether the harm caused by the defendant was physical rather than economic; (2) whether the defendant's tortious conduct evinced a reckless disregard of the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or

deceit, or mere accident.  Campbell, 538 U.S. at 419; Gore, 517 U.S. at 576-77; Bardis, 119 Cal. App. 4th at 21, 14 Cal. Rptr. 3d at 104.

   Applying the five subfactors to the issue of defendant's reprehensibility in the present case, the undersigned finds that the first three subfactors do not favor a high punitive damages award because the harm caused by defendant was economic rather than physical, there is no evidence that defendant's conduct evinced reckless disregard of the health or safety of any person, and it does not appear that plaintiff had financial vulnerability.  However, the remaining subfactors favor a high-end punitive damages award because defendant's conduct involved repeated actions and was the result of intentional trickery and deceit.

   Plaintiff has requested punitive damages in an amount five times the amount of actual damages.  Although the ratio of 5 to 1 is within the single-digit range suggested by the Supreme Court as the outer limit likely to satisfy due process, lesser ratios, perhaps as low as 1 to 1, may reach the outermost limit of the due process guarantee, particularly where "compensatory damages are substantial." Campbell, 538 U.S. at 425.  The compensatory damages in the instant case serve only to compensate plaintiff for the loss of the 39 containers known to have been stolen by defendant, and the amount of such damages is not so substantial as to suggest that a ratio of 1 to 1 would be the outermost limit of punitive damages consistent with due process.  At the same time, a ratio of 5 to 1 may be excessive.  See, e.g., Romo v. Ford Motor Co., 113 Cal. App. 4th 738, 6 Cal. Rptr. 3d 793 (Cal. Ct. App. 2003) (where the defendant was found to have willfully and consciously ignored the dangers to human life inherent in its Bronco design, resulting in the deaths of three persons, the appellate court found that the defendant's conduct was highly reprehensible but reduced the punitive damages award to five times the total compensatory damages figure); Diamond Woodworks, Inc. v. Argonaut Ins. Co., 109 Cal. App. 4th 1020, 135 Cal. Rptr. 736 (2003) (where the defendant was found guilty of bad faith, fraud, and breach of contract, the appellate court reduced the punitive damages award to approximately 3.8 times the fraud compensatory figure).

1    Consideration of the third <u>Campbell</u> guidepost, i.e., the difference between the
2 punitive damages sought and any civil penalties authorized or imposed in comparable cases,
3 proves helpful.  It is true that violations of common law tort duties do not easily lend themselves
4 to a comparison with statutory penalties.  <u>Bardis</u>, 119 Cal. App. 4th at 24, 14 Cal. Rptr. 3d at 106
5 (citing <u>Cont'l Trend Resources, Inc. v. OXY USA Inc.</u>, 101 F.3d 634, 641 (10th Cir. 1996)).
6 However, "California typically imposes treble damages penalties for fraudulent and bad faith
7 conduct." <u>Id</u> (citing Cal. Civ. Code §§ 1947.10, 1738.15, 1057.3(b), 1719(a)(2) & (a)(3); Cal.
8 Civ. Proc. Code §§ 732, 733, 735).  "Where intentional acts of fraud are involved, ratios of at
9 least 3 to 1 appear to be called for." <u>Id.</u>  Moreover, "California also imposes substantial *criminal*
10 penalties for embezzlement and breach of fiduciary duty," particularly where there is a pattern of
11 related felony conduct that involves the taking of more than $100,000.  119 Cal. App. 4th at 24,
12 14 Cal. Rptr. 3d at 106-07 (citing Cal. Pen. Code §§ 186.11(a)(1), 484, 487, 503, 506, 514, &
13 12022.6(2)).  Even where the defendant's conduct has not been adjudicated in a criminal
14 proceeding, criminal penalties may be reflective of the seriousness with which California views
15 the wrongful conduct at issue.  119 Cal. App. 4th at 24, 14 Cal. Rptr. 3d at 107.

16    After careful consideration of each of the <u>Campbell</u> guideposts, the undersigned
17 will recommend that plaintiff be awarded punitive damages 3.5 times the amount of plaintiff's
18 actual damages.  Punitive damages in the amount of $743,897.59 appears to be likely serve to
19 punish and deter defendant and others.

20    The sole remaining issue is plaintiff's request for pre-judgment interest at 10% per
21 annum, to start accruing on December 5, 2005, the date on which plaintiff's complaint was filed.
22 The record reflects that this request was made for the first time in plaintiff's motion for default
23 judgment.  In contrast, the prayer for relief in plaintiff's complaint specifically requests "interest
24 on Judgment at the maximum legal rate from the date of entry of Judgment until paid in full."
25 (Compl. at 7.)  Although plaintiff's motion for default judgment was served on defendant, the
26 motion was served by regular mail.  At the hearing on plaintiff's motion, the undersigned

questioned the appropriateness of a December 5, 2005 start date for pre-judgment interest, given plaintiff's 50-week delay between the May 11, 2006 entry of default by the clerk and its May 25, 2007 filing of a motion for default judgment. Plaintiff's counsel stated on the record that pre-judgment interest could be waived. Under these circumstances, the undersigned will recommend that plaintiff's request for pre-judgment interest be deemed waived and that plaintiff be awarded interest on judgment at 10% per annum from the date of entry of judgment until paid in full. See Cal. Civ. Code §§ 3288, 3289(b) (West 2007).

Accordingly, IT IS HEREBY ORDERED that plaintiff's second claim for relief, seeking imposition of a constructive trust on defendant's bank account, is dismissed at plaintiff's request pursuant to Federal Rule of Civil Procedure 41(a)(1); and

IT IS RECOMMENDED that:

1. Plaintiff's May 25, 2007 motion for entry of default judgment be granted on the terms set forth below;

2. Plaintiff be awarded actual damages in the amount of $212,542.17 on plaintiff's claim for conversion;

3. Plaintiff be awarded punitive damages in the amount of $743,897.59;

4. Plaintiff's request for pre-judgment interest be deemed waived and plaintiff be awarded interest on judgment at 10% per annum from the date of entry of judgment until paid in full.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be served and filed within five days after the objections are served. The parties are advised that failure to file objections within the specified time may, under certain

circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 23, 2007.

                                                                        /s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.civil/mobilemini2458.f&r.defaultj